Hill, J.:
We reverse Daquantrius S. Johnsons firearm convictions because the trial judge fell asleep during his trial. We see no option other than granting Johnson a new trial for such an error.
The State charged Johnson with criminal possession of a firearm by a convicted felon, aggravated assault, and criminal discharge of a firearm. After his conviction, the court imposed a 43-month sentence, 12 months’ postrelease supervision, and lifetime registration. In this direct appeal, Johnson raises 10 issues, but we focus on the first. Basically, we must answer the question: What are the legal consequences of a judge falling asleep on the bench during a criminal trial? After that, we will address two other issues that may have an impact on a new trial.
*735 On the morning of the second day of the trial, one of the jurors pulled the bailiff aside because the juror had observed die trial judge sleeping during the trial the day before. The juror asked the bailiff whether Johnson could have a fair trial. This remark was passed on to the judge. The trial judge acknowledged on the record that he “did nod off some.” Addressing this issue, the judge told the jury:
“You are the trier of facts. I decide what evidence you will hear and what instructions you will receive. I don’t believe during the course of this trial yesterday afternoon there were any objections raised that I had to make rulings on that would have been affected by my nodding off.”
The judge asked whether Johnson wanted to make a motion for a mistrial based on the conduct. Defense counsel stated, “Not at this time. We’re ready to proceed.” The afternoon session included opening statements and part of the victim’s testimony.
Johnson contends on appeal that a sleeping judge is an absent judge, and structural error occurs when a judge fails to preside over a jury trial. Johnson does acknowledge that he did not object to the trial judge’s “nodding off’ but now contends that he may raise the issue for the first time on appeal to prevent the denial of his fundamental right to a jury trial.
For its part, the State argues that we should not consider this issue for the first time on appeal. If we do address the issue, the State contends it is invited error; and if we cannot agree that it is invited error, then we must reject the argument because Johnson has failed to show any prejudice to his case.
We address this issue because Johnson’s newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case. See State v. Phillips, 299 Kan. 479, 493, 325 P.3d 1095 (2014). But, more importantly, there is no more fundamental right in the United States than the right to a jury trial. State v. Bowers, 42 Kan. App. 2d 739, 740, 216 P.3d 715 (2009). This is an issue that cannot be ignored. We now look to the question of invited error.
After the judge admitted to sleeping during the trial, Johnson’s counsel declined the court’s invitation to move for a mistrial. On appeal, Johnson contends the invited error doctrine is inapplicable *736 because the error was structural in nature. The State argues to the contrary.
It is fundamental that a litigant may not invite error and then complain of that error on appeal. State v. Verser, 299 Kan. 776, 784, 326 P.3d 1046 (2014). This long-standing rule supports the common-sense notion that parties cannot complain about their own conduct at tiial or about rulings they asked a trial judge to make. State v. Hargrove, 48 Kan. App. 2d 522, 531, 293 P.3d 787 (2013).
This doctrine also binds trial counsel to strategic decisions and deters parties from asking a judge to act in a certain way just to litter the record with error in order to provide grounds for appeal- of an adverse judgment. Hargrove, 48 Kan. App. 2d at 532. Indeed, the Hargrove court held that an invited jury instruction error cannot be asserted as error on appeal when the instruction was proposed for a tactical advantage. 48 Kan. App. 2d at 547. In Verser, our Supreme Court applied the invited error doctrine when a judge gave the defendant the option of having a mistrial declared, and instead the defendant chose to proceed with the trial. 299 Kan. at 784.
But there are limits to the doctrine’s application. The invited error doctrine is inapplicable when a constitutional error is structural. Structural errors are so intrinsically harmful that automatic reversal is required without regard to existence of effect on outcome. State v. Hill, 271 Kan. 929, 934, 26 P.3d 1267 (2001), abrogated on other grounds by State v. Voyles, 284 Kan. 239, 252-53, 160 P.3d 794 (2007).
Interestingly, few constitutional errors are structural errors. The short list of structural errors includes:
• total deprivation of counsel;
• lack of an impartial trial judge;
• denial of right to self-representation at trial;
• violation of a right to a public trial; and
• erroneous reasonable doubt instruction. See United States v. Marcus, 560 U.S. 258, 263, 130 S. Ct. 2159, 176 L. Ed. 2d 1012 (2010).
*737 We note that these errors cannot be cured by anything other than a new trial.
Simply put, the issue at the heart of this case is whether the fact that the judge slept during a portion of a criminal trial constitutes structural error, if so, Johnson’s convictions must be reversed. We hold that the judge sleeping during a criminal trial is a structural error.
Errors are structural when they defy harmless-error analysis because they affect the framework within which the trial proceeds. Two recent Kansas cases come to mind. In State v. Jones, 290 Kan. 373, Syl. ¶ 7, 228 P.3d 394 (2010), the court held a violation of the Sixth Amendment right to counsel was subject to structural error analysis. Then in State v. Womelsdorf, 47 Kan. App. 2d 307, 323, 274 P.3d 662 (2012), the court ruled that the lack of an impartial judge is a structural error. If we cast our research net outside the state, more illumination is produced.
In Arizona v. Fulminante, 499 U.S. 279, 309-10, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991), the Court distinguished mere trial errors—e.g., tire admission of an involuntary confession—from structural errors—e.g., the total deprivation of the right to counsel at trial and an impartial judge. Trial errors are errors which occur when evidence is presented and may be assessed in the context of other evidence presented to determine whether the error prejudiced the defendant. 499 U.S. at 307-08. Structural errors differ because they are
“structural defects in the constitution of the trial mechanism, which defy analysis by ‘harmless-error’ standards. The entire conduct of the trial from beginning to end is obviously affected by the absence of counsel for a criminal defendant, just as it is by tire presence on the bench of a judge who is not impartial.” 499 U.S. at 309-10.
The Court listed other structural errors:
• unlawful exclusion of members of the defendant s race from a grand jury;
• the right to self-representation at trial; and
• the right to a public trial. 499 U.S. at 310.
*738 “Each of these constitutional deprivations is a similar structural defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself. ‘Without these basic protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair.’ ” 499 U.S. at 310.
In Gomez v. United States, 490 U.S. 858, 876, 109 S. Ct. 2237, 104 L. Ed. 2d 923 (1989), the United States Supreme Court held that it was structural error for a magistrate, rather than a statutorily authorized judge, to conduct jury selection.
“Among those basic fair trial rights that ‘“can never be treated as harmless’” is a defendant’s ‘right to an impartial adjudicator, be it judge or jury.’ [Citations omitted.] Equally basic is a defendant’s right to have all critical stages of a criminal trial conducted by a person with jurisdiction to preside.” 490 U.S. at 876.
As early as 1899, tire United States Supreme Court, explaining the unique role of the trial judge, held that a trial by jury is a trial
“in the presence and under the superintendence of a judge empowered to instruct [the jury] on the lato and to advise them on the facts, and ... to set aside their verdict, if, in his opinion, it is against the law or the evidence. This proposition has been so generally admitted, and so seldom contested, that there has been little occasion for its distinct assertion.” (Emphasis added.) Capital Traction Co. v. Hof, 174 U.S. 1, 13-14, 19 S. Ct. 580, 43 L. Ed. 873 (1899).
How can a sleeping judge supervise anything other than his or her dreams? Is the trial really “in the presence” of a sleeping judge? Obviously, this issue defies harmless error analysis.
Some Kansas cases are relevant. In an early Kansas Supreme Court case, State v. Beuerman, 59 Kan. 586, 53 P. 874 (1898), during argument, the presiding judge of a jury trial left the bench, went into an adjoining room, closed the door behind him, and remained there for about 10 minutes. The Supreme Court admonished that a judge cannot relinquish control of the trial:
“[T]here can be no court without a judge, and he cannot even temporarily relinquish control of the court or the conduct of the 'trial. It is necessary that he should hear all that transpires in the trial in order that he may intelligently review the proceedings upon the motion for a new trial. It is especially important that he should be visibly present every moment of the actual progress of a criminal trial where tire highest penalty of the law may be imposed. The defendant is entitled to be tried in a court duly constituted, and if tire presiding judge abandons the trial or relinquishes control over tire proceedings the accused has good cause to complain. [Citations omitted.] The fact that the court may not see or hear everything *739 occurring in the court-room, or that he may step into an adjoining room, but not out of hearing of the proceedings, is not necessarily prejudicial to the interests of the defendant in every case; but the presiding judge cannot safely absent himself from the trial or relinquish control over the proceedings during the trial.” 59 Kan. at 592.
We must point out that the Beuerman court did not determine whether the absence of the trial judge constituted reversible error because of other errors in tire case. 59 Kan. at 592.
In a later civil case, the presiding judge of a jury trial called the clerk to preside over arguments, saying he had other matters to attend to. Our Supreme Court stated “it ought not to require very much of a showing of prejudice to authorize a new trial” and reversed the judgment. See Fiechter v. Fiechter, 97 Kan. 166, 167, 155 P. 42 (1916).
In another civil case, a party moved for a new trial alleging the trial judge fell asleep during the trial. In ruling on the motion, the judge said he did not recall dozing off. The Supreme Court found that the record did not support the party’s allegations, despite an affidavit from one of the jurors indicating the judge appeared to be asleep at one point. The court held the mere possibility of prejudice was insufficient to overturn the verdict. Ettus v. Orkin Exterminating Co., Inc., 233 Kan. 555, 565, 665 P.2d 730 (1983).
Even if the civil cases require some showing of prejudice before reversing when a judge is absent or asleep during a trial, we must point out that those cases did not consider the question of structural error. In Orkin, the court found that the record did not support the party’s factual contention that the judge had fallen asleep during the trial. 233 Kan. at 565. In other words, there remained a question of whether the judge, in fact, fell asleep.' Here, there is no question.
Johnson contends that a sleeping judge is an absent judge. Indeed, a sleeping judge does not and cannot preside over a trial. Many courts have considered whether a judge’s absence from the courtroom during some stage of the trial constitutes structural error.
The Tenth Circuit Court of Appeals recently considered whether an absent judge constituted structural error, but the case is not *740 veiy helpful. In United States v. Solon, 596 F.3d 1206, 1212 (10th Cir. 2010), the district judge left the bench for almost 6 minutes during defense counsels closing argument. The judge told the parties to “go right ahead,” but nothing occurred during his absence. 596 F.3d at 1209. Defense counsel waited for the judge’s return. The court concluded that under these facts, the absence of the judge was not structural error. The court did not decide whether a judges absence and “ ‘complete abdication of judicial control over the process’” would constitute structural error. 596 F.3d at 1212 n.l. Practically speaking, in Solon, the trial was suspended during the judge’s absence because everything stopped when the judge left tire bench.
Some courts have found structural error when a judge has been absent from the courtroom. The Illinois Supreme Court held it was per se reversible error when a judge left tíre bench during cross-examination of a witness. See People v. Vargas, 174 Ill. 2d 355, 673 N.E.2d 1037 (1996). The judge was unable to rule on objections, except by having a question read back upon tire judge’s return.
“A defendant’s liberty, as well as the State’s interest in convicting the guilty, are at stake in eveiy criminal trial. A presiding judge’s supervision over every stage of the proceedings precludes speculation that jurors may perceive evidence received in the judge’s absence as less significant, and impresses upon jurors the importance of tire interests of tire State and the defendant. A rule that a trial judge’s absence from the proceedings is harmless would open the door to abuses which could hinder those interests and undermine public confidence in judicial proceedings.” 174 in. 2d at 371-72.
A Florida appellate court held it was unworkable to require a showing of prejudice when a trial judge was absent during part of the trial. The court further held a prejudice requirement would not sufficiently deter judges from such behavior. Peri v. State, 426 So. 2d 1021, 1027 (Fla. Dist. App. 1983).
Johnson relies on a Third Circuit opinion. The Third Circuit held it was structural error for a judge to be absent at a critical stage of a criminal trial, on the facts of the case at hand. United States v. Mortimer, 161 F.3d 240, 241-42 (3d Cir. 1998). In Mortimer, the presiding judge disappeared without notice during defense counsel’s summation. The prosecutor attempted to make an objection, *741 but instead exclaimed, “The judge is not here.” 161 F.3d at 241. No reason was given for the judges disappearance. The judge was back on the bench in time to thank defense counsel for her summation and call on the prosecutor. The Third Circuit stated:
“A trial consists of a contest between litigants before a judge. When a judge is absent at a ‘critical stage’ the forum is destroyed. Gomez v. United States, 490 U.S. 858, 873, 109 S. Ct. 2237, 104 L. Ed. 2d 923 (1989). There is no trial. The structure has been removed. There is no way of repairing it. The framework ‘within which the trial proceeds’ has been eliminated. See Arizona v. Fulminante, 499 U.S. 279, 309-10, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991). The verdict is a nullity. Gomez, 490 U.S. at 876, 109 S. Ct. 2237 (1989).” 161 F.3d at 241.
Here, it is unknown how long or during which precise portion of the trial the judge slept. A juror did notice the judge sleeping and asked the bailiff if Johnson could have a fair trial. And a juror sought to bring the matter up during juiy deliberations. The judge admitted on the record that he “did nod off some.” For whatever portion of the trial the judge slept, the judge was not presiding over this trial.
Such facts make it difficult to assess prejudice if we do not rule this to be structural error. How long is it permissible for a judge to sleep before it becomes prejudicial? Fifteen minutes? Half an hour? During summations? This issue defies harmless error analysis which means it must be structural error.
According to the record, it was the first afternoon of the trial when the judge fell asleep. The juiy had just been seated, the opening statements were made, and the prosecutors key witness took the stand. These are all critical stages of the trial. A fully awake judge was needed to preside over these proceedings. The judge was later called upon to rule on the defense’s motion for judgment of acquittal. At least one of the jurors noticed the judge was sleeping. The fact that the judge was sleeping permeated this trial. One of the jurors sought to bring it up during jury deliberations. The argument for structural error is compelling.
As the Kansas Supreme Court said in 1898, there can be no court without a judge. How can the public have confidence in the outcome of a trial if the trial judge is napping? This is not an error in the presentation of evidence, nor is it an error in the instruction *742 of the jury, nor is it like other trial issues where we examine them to see if they are harmless. This error affected the framework of the entire trial. Our citizens expect a fully awake trial judge presiding over a criminal trial. This was structural error.

We turn to tioo issues raised by Johnson that may arise on remand—waiver of a jury trial and failure to instruct the jury on one count of misdemeanor discharge of a firearm.

Johnson contends that the district court was required to obtain a jury trial waiver before accepting his stipulation that he had a prior adjudication that prevented him from possessing a firearm. We hold the rule set out in White v. State, 222 Kan. 709, 713-14, 568 P.2d 112 (1977), controls this issue and rule that Johnson is not entitled to relief on this point.
The State charged Johnson with criminal possession of a firearm by a convicted felon. Johnson signed a stipulation that stated he had a prior juvenile adjudication that prohibited him from owning and possessing a firearm. After jury selection, tire court informed tire parties that it planned to read the stipulation during preliminary instructions to the jury. Both defense counsel and the prosecutor agreed. The court read the stipulation during the preliminary instructions. The written stipulation was later provided to the jurors during their deliberations.
We find no error on this point. In White, 222 Kan. at 713-14, tire Supreme Court stated:
“We know of no case or statute holding that a trial court must interrogate and advise a defendant, who is represented by counsel, before accepting and approving stipulations as to the evidence, and we are not prepared to initiate such a requirement. The stipulation in this case was in witting. It was prepared and was signed by tire defendant and his attorney prior to its presentation to the trial court. It was read aloud to the defendant in the presence of his attorney.... If petitioner had any objection to that stipulation, the time for complaint was tiren, not now.
"We note that even now, petitioner is not contending that he misunderstood tire stipulation, or that he had insufficient time to discuss it with counsel, or that he was unaware of its effect, or that he entered into it other than freely, understandingly and voluntarily. He does not contend that he was uninformed, overreached, coerced, defrauded, or victimized in any way.”
White is still good law. See State v. Rizo, 304 Kan. 974, 982-83, 377 P.3d 974 (2016).
*743 After White, our Supreme Court outlined a specific procedure for courts to follow when a defendant stipulated to a prior conviction for purposes of a criminal possession of a firearm charge. See State v. Lee, 266 Kan. 804, 815-16, 977 P.2d 263 (1999). Lee was concerned with the admissibility of evidence. The defendant claimed that because he offered to stipulate to his prior felony conviction, it was error for the district court to admit evidence of that conviction. The Lee holding was explicitly limited to “criminal possession of a firearm status cases in which the issue as to what constitutes admissible evidence when defendant has stipulated to having committed a prior felony was asserted in the trial court and remains an issue on appeal.” 266 Kan. at 804, Syl. ¶ 5.
Here, there is no issue of what constitutes admissible evidence. And Lee does not say that failure to have the defendant personally acknowledge a stipulation violates the defendant’s right to a jury trial. Rather, White suggests that the court does not violate such right when it accepts a stipulation without first advising the defendant. 222 Kan. at 713. Therefore, Johnsons right to a jury trial was not violated.
As was the case in White, Johnson does not contend that he
“misunderstood the stipulation, or that he had insufficient time to discuss it with counsel, or that he was unaware of its effect, or that he entered into it other than freely, understanding^ and voluntarily. He does not contend that he was uninformed, overreached, coerced, defrauded, or victimized in anyway.” See 222 Kan. at 713-14.
Johnson is entitled to no relief on this matter.

The court erred by not giving a jury instruction on misdemeanor criminal discharge of a firearm.

Johnson contends the district court erred by refusing to instruct the jury on misdemeanor criminal discharge of a firearm—a purported lesser included offense of felony criminal discharge of a firearm.
Johnson s trial counsel requested the court to instruct the jury on misdemeanor criminal discharge of a firearm. The State objected. The district court refused to instruct the jury on the misdemeanor offense because it was factually inappropriate.
*744 “[I]f the jury finds that Mr. Johnson is the person that fired the shot in the circumstances that were present, the car following these two boys that ended up at Mr. Johnson’s house, Mr. Johnson going out of the house with a gun in hand, firing a shot is not the type of act that I think is contemplated by that misdemeanor statute and I will not give that instruction.”
When the failure to give a lesser included offense instruction is challenged on appeal, appellate courts (1) determine whether the appellate court has jurisdiction to consider the issue and whether it was properly preserved; (2) determine tire merits of the claim; and (3) determine whether the error was harmless. State v. Dupree, 304 Kan. 377, 391-92, 373 P.3d 811 (2016). Johnsons claim was preserved. He requested the instruction, and the district court denied the request.
Whether a crime is a lesser included offense of another—i.e., whether the instruction is legally appropriate—is a question of law over which an appellate court has unlimited review. State v. Charles, 304 Kan. 158, 165, 372 P.3d 1109 (2016). A lesser included crime is:
“(1) A lesser degree of the same crime, except that there are no lesser degrees of murder in the first degree under subsection (a)(2) of K.S.A. 2013 Supp. 21-5402, and amendments thereto;
“(2) a crime where all elements of the lesser crime are identical to some of the elements of the crime charged;
“(3) an attempt to commit the crime charged; or
“(4) an attempt to commit a crime defined under paragraph (1) or (2).” K.S.A. 2013 Supp. 21-5109(b).
Johnson was charged with criminal discharge of a firearm in violation of K.S.A. 2013 Supp. 21-6308(a)(l)(B). That statute provided:
“(a) Criminal discharge of a firearm is the:
(1) Recldess and unauthorized discharge of any firearm:
[[Image here]]
(B) at a motor vehicle ... in which there is a human being whether the person discharging the firearm knows or has reason to know that diere is a human being present.
[[Image here]]
(3) discharge of any firearm:
[[Image here]]
*745 (B) upon or from any public road, public road right-of-way or railroad right-of-way except as otherwise authorized by law.” K.S.A. 2013 Supp. 21-6308.
K.S.A. 2013 Supp. 21-6308(a)(l)(B) is a severity level 7 person felony; K.S.A. 2013 Supp. 21-6308(a)(3)(B) is a class C misdemeanor. K.S.A. 2013 Supp. 21-6308(b). Both parties agree that misdemean- or criminal discharge of a firearm is a lesser degree of the charged crime. See State v. Ramirez, 299 Kan. 224, 230-33, 328 P.3d 1075 (2014); State v. Jefferson, 297 Kan. 1151, 1170, 310 P.3d 331 (2013). The instruction was legally appropriate. See K.S.A. 2013 Supp. 21-5109(b)(1).
Even when a lesser included offense instruction would have been legally appropriate, failure to instruct on the lesser included crime is erroneous only if the instruction would have been factually appropriate under K.S.A. 2013 Supp. 22-3414(3). See State v. Molina, 299 Kan. 651, 661, 325 P.3d 1142 (2014). Lesser included offense instructions must be given if “there is some evidence which would reasonably justify a conviction of some lesser included crime” as defined in K.S.A. 2013 Supp. 21-5109(b). K.S.A. 2013 Supp. 22-3414(3). When evaluating whether a lesser included instruction is factually appropriate in the individual case, the standard of review is “[i]f, after a review of all the evidence viewed in the light most favorable to the prosecution, we are convinced that a rational factfinder could have found the defendant guilty of the lesser crime, failure to give the instruction is error.” State v. Fisher, 304 Kan. 242, 258, 373 P.3d 781 (2016). But see Charles, 304 Kan. at 165 (considering State’s request, after close of evidence, for an expansive lesser included offense instruction).
Here, a rational factfinder could have found Johnson guilty of the lesser offense—discharge of a firearm upon or from a public road. K.S.A. 2013 Supp. 21-6308(a)(3)(B). Randall Gifford, the victim, testified he was in his vehicle, backing up on Cessna Street. He saw a man walk out into Cessna Street near the intersection, pull out a gun, and fire a shot. Police found a bullet shell casing on Cessna Street near tire intersection of Cessna and Roseberry. The district court erred by refusing to instruct the error on misdemeanor criminal discharge of a firearm.
The error is reversible only if the court determines there is a *746 reasonable probability that the error affected the outcome of the trial in light of the entire record. State v. Plummer, 295 Kan. 156, 168, 283 P.3d 202 (2012).
Here, the juiy could have reasonably questioned whether Johnson fired “at a motor vehicle” as required by K.S.A. 2013 Supp. 21-6308(a)(1)(B)—the charged crime. Gifford told the 911 dispatcher that: “He fired it towards me but I think he was pointing more up in the air... but it was still towards me ... he wasn’t pointing directly up.” Gifford told one police officer that the shooter “intentionally fired over his head.” At trial, Gifford testified that the man pointed the gun at his car. Giffords car was not hit by a bullet. Sergeant Bart Brunscheen testified that he overheard Johnson say that “he did shoot the gun, but... he wasn’t shooting it at anybody.” Therefore, the district court’s failure to give the misdemeanor instruction was reversible error. Assuming the State pursues the same charges, in any future trial, the misdemeanor alternative must be given.
Reversed and remanded for a new trial.
# * *