NOT DESIGNATED FOR PUBLICATION

No. 119,538

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RUSSELL DEAN BASTON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; SALLY D. POKORNY, judge. Opinion filed October 18, 2019.
Affirmed.

*Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

*Kate Duncan Butler*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., LEBEN, J., and BURGESS, S.J.

PER CURIAM: Russell D. Baston appeals after a jury convicted him of theft, criminal possession of a weapon by a felon, and interference with law enforcement officers. After the trial, Baston also pled no contest to two counts of misdemeanor possession of drug paraphernalia that are not an issue in this appeal. Baston contends on appeal that the term "knife"—as used in K.S.A. 2018 Supp. 21-6304—is unconstitutionally vague. He also contends that there was insufficient evidence presented at trial to establish that he possessed a knife or to establish that he interfered with law

1

enforcement officers. In addition, he contends that the district court erred in instructing the jury. Because we find no reversible error, we affirm Baston's convictions.

FACTS

On August 27, 2015, officers of the Lawrence Police Department arrested Baston while attempting to serve him with a felony arrest warrant. The State charged him with three counts of criminal possession of a weapon by a felon, felony theft, interference with law enforcement, and several drug charges. During a three-day jury trial that started on February 6, 2017, the State presented evidence supporting the following facts through the testimony of multiple witnesses and more than 50 exhibits admitted into evidence:

In mid-August 2015, someone stole a 1996 Ford Bronco owned by Chad Lilly and John Cuinn Brazee from their place of business in North Lawrence. Lilly testified that he parked the Bronco in its regular spot at the business after work on August 12. When he returned to work the following morning, Lilly discovered that the Bronco was missing and he filed a stolen vehicle report with the Lawrence Police Department. At trial, Brazee estimated the value of the Bronco—which he testified was in good condition—to be $5,000 or more.

About a week later, Brazee noticed someone driving the stolen Bronco in North Lawrence. Although he attempted to get the Bronco to pull over, the driver refused to do so. During his testimony, Brazee acknowledged that he was "not a hundred percent sure" the Bronco was his because it had different tires and wheels. However, he was able to identify Baston as the person he saw driving what he believed to be the stolen Bronco.

On the afternoon of August 27, 2015, a Lawrence Police Officer, Kimberlee Nicholson, advised Detective John Hanson that she believed she had seen Baston—who had an active felony arrest warrant—driving on 5th Street. Detective Hanson was able to

2

locate Baston as he was backing a white pickup truck into Lawrence Alumbaugh's driveway. The detective also saw Alumbaugh helping Baston hook a trailer to the pickup truck. Alumbaugh then drove the trailer to a wooded area behind a shed on the property.

As Baston was helping Alumbaugh unload trash from the trailer, several police officers—including Detective Hanson and a canine officer, approached Baston to serve the arrest warrant as he was helping Alumbaugh unload trash from the trailer. The canine officer announced, "Don't move or I am going to release my dog." Although Alumbaugh told the officer he would comply, Baston began to run. The canine officer released his dog and Baston was found after several minutes about 150 yards away hiding in tall grass. Baston was lying in stagnant water and had tried to cover himself with grass.

Upon being discovered, Baston cussed, threatened the canine officer, and lunged at the dog. He also lunged toward one of the officers. As the officers tried to restrain Baston, he caused one of them to fall into the mud. After restraining Baston, the arresting officers seized a machete with an 11-inch blade that was in a sheath on his belt. The officers also seized a folding pocket knife from one of Baston's short's pockets. The district court admitted both the machete and the pocket knife into evidence at trial.

While speaking with Alumbaugh following Baston's arrest, the officers learned that he had recently seen Baston driving a green Ford Bronco. Moreover, in the Bronco—which was recovered from Alumbaugh's field—officers found a shirt that had Baston's DNA on it. According to Alumbaugh, the tires on the Bronco appeared to have been switched out for the tires on a pickup truck also located on his property. However, Baston's wife testified at trial that he took the tires off her truck and replaced them with the tires on the Bronco because he "wanted to go mudding . . . ."

Officers also searched the white pickup truck that Baston had been driving and discovered a Makita tool bag containing several pairs of pliers, screwdrivers, pocket

knives, gloves, and a 12-gauge flare gun with four rounds. Likewise, officers found a baggie containing methamphetamine in the outside pocket of the Makita bag. Officers also found several pipes and a small baggie containing marijuana in the pickup truck. Testing confirmed that the gloves found in the Makita bag had Baston's DNA on them.

Brazee was able to identify the Bronco to be the one stolen from his business. The vehicle had been spray painted, the spare tire was missing, the license plate had been removed, and a Jayhawk sticker had been covered. The Bronco's wheels and tires had also been replaced. Brazee described the general condition of the vehicle as "beat up" or "trashed." The gear shift had been broken in half and the vehicle was covered in mud both inside and out. Brazee also identified the wheels and tires on another truck on Alumbaugh's property to be from the Bronco.

Baston's wife arrived at Alumbaugh's residence while the officers were arresting her husband. Although she did not tell the officers at the time, Baston's wife testified the bag found in the white pickup truck belonged to her. In particular, she claimed that the methamphetamine, marijuana, and the drug pipes were hers. She also claimed to own the flare gun and the flares. According to Baston's wife, a man gave Baston the Bronco at a Motel 6 about a week before his arrest to settle a preexisting debt. Yet she could not identify the man. On cross-examination, the State's attorney pointed out that she had told the police that Baston used methamphetamine.

Finally, Baston testified about the events on August 27, 2015. According to Baston, he drove to a friend's house to borrow a weed eater. Baston claimed that he borrowed the white pickup truck he was driving that day, and he did not open any containers or items inside. After arriving at Alumbaugh's residence, he started to weed-eat and "put the machete on" to begin "whacking the branches . . . ." After loading the trailer with debris, Baston and Alumbaugh went to the burn pit in the pasture. Baston acknowledged that the Bronco was parked near this location.

4

Baston admitted that he "turned around and went into the woods" as the officers approached. Baston claimed that the officer never told him to stop until he was already in the back pasture. He also claimed that he yelled "I'm right here" and that the officer told him to get down into the water. Although Baston claimed that the officer's dog bit him, the district court admonished the jury not to consider this testimony.

As for the stolen Bronco, Baston testified that a friend gave it to him seven or eight days before his arrest. Baston claimed that he went to visit a person named "Ty" at a local motel. According to Baston, he loaned Ty $250, and Ty gave him the Bronco as collateral. Baston suggested that if Ty had not repaid the $250 within one week, he would be able to pay Ty another $250 and keep the Bronco.

Baston admitted that he changed the wheels and tires on the Bronco, but he explained that he did so because it became stuck in the mud shortly after he took possession of it and the newer tires were wider. He also admitted cutting out part of the Bronco's inner fender to accommodate the oversized tires. Although Baston recalled Brazee yelling at him one day as he was driving the Bronco, he testified that he did not understand what Brazee said so he just waved and went on his way.

Officer Nicholson testified as a rebuttal witness. She explained that while she examined the vehicles in the clearing, Baston's wife approached her and said that she knew that her husband had an active arrest warrant. Baston's wife then asked Officer Nicholson if the officers were arresting her husband "because of the Bronco he took." Officer Nicholson testified that she wrote the exact statement in her report.

According to Officer Nicholson, Baston's wife also stated that her husband told her that a friend in Topeka gave him the vehicle. However, Baston's wife was evidently suspicious of her husband's story. Officer Nicholson also testified that Baston's wife told her that he had used methamphetamine two days before his arrest.

5

After deliberation, the jury convicted Baston of two counts of criminal possession of a weapon by a convicted felon, felony theft, and interference with law enforcement. Because the jury could not reach a verdict on the remaining counts, the district court declared a mistrial on those charges. The parties reached an agreement after the trial on the outstanding charges in which Baston pled no contest to two misdemeanor possession of drug paraphernalia charges and the State dismissed several charges, including the charge of criminal possession of a weapon relating to the folding pocket knife. On August 2, 2017, the district court sentenced Baston to a total of 35 months' imprisonment.

ANALYSIS

*Constitutionality of K.S.A. 2018 Supp. 21-6304*

On appeal, Baston contends that K.S.A. 2018 Supp. 21-6304 is unconstitutional on its face and as applied to him in this case. Baston argues that the term "knife" as used in the statute is vague and suggests that he "was using his machete as a work tool, not as a weapon." Whether a statute is constitutional is a question of law subject to unlimited review. *State v. Petersen-Beard*, 304 Kan. 192, 194, 377 P.3d 1127, *cert. denied* 137 S. Ct. 226 (2016). We must presume that statutes are constitutional and resolve all doubts to construe a statute as constitutionally valid. *State v. Gonzalez*, 307 Kan. 575, 579, 412 P.3d 968 (2018).

We apply a two-part test to determine whether a statute is unconstitutionally vague. First, we review the statute to determine whether it gives a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited. Second, we review the statute to determine whether it provides explicit standards for its enforcement to prevent arbitrary and discriminatory enforcement. *State v. Williams*, 308 Kan. 1439, 1459, 430 P.3d 448 (2018) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108-09, 92 S. Ct. 2294, 33 L. Ed. 2d 222 [1972]). "'A statute will not be declared void for

6

vagueness when it employs words commonly used, previously judicially defined, or having a settled meaning in law.'" *Village Villa v. Kansas Health Policy Authority*, 296 Kan. 315, 334, 291 P.3d 1056 (2013).

Here, the parties stipulated at trial that Baston had a prior felony conviction. After considering the evidence, the jury found him guilty of violating K.S.A. 2015 Supp. 21-6304 (criminal possession of a weapon). In particular, the jury found that Baston was in the possession of a machete at the time of his arrest. On appeal, Baston does not dispute that he was in possession of the machete, but he asserts that he had been using it as a tool to cut brush rather than as a weapon.

K.S.A. 2018 Supp. 21-6304 makes it a crime for a convicted felon to possess a weapon. The term "weapon" is defined in the statute to mean "a firearm or a knife." K.S.A. 2018 Supp. 21-6304(c)(2). The statute defines the term "knife" to include "a dagger, dirk, switchblade, stiletto, straight-edged razor or any other dangerous or deadly cutting instrument of like character." K.S.A. 2018 Supp. 21-6304(c)(1). Baston argues that the definitions used in K.S.A. 2018 Supp. 21-6304(c) are unconstitutionally vague on the face of the statute and as applied in this case.

Here, it is undisputed that Baston was in the possession of a machete. Giving the words used in the statute their common meaning, we note that a "machete" is "[a] large heavy knife with a broad blade, used as a weapon and an implement for cutting vegetation." American Heritage Dictionary 1050 (5th ed. 2016). Similarly, the online Merriam-Webster Dictionary (2019) defines "machete" as "a large heavy knife used for cutting sugarcane and underbrush and as a weapon." Thus, by definition, a machete is a knife.

Baston would have us limit our focus to the phrase "any other dangerous or deadly cutting instrument of like character" and suggests that convicted felons have no way to

7

know what cutting instruments are illegal to possess. However, we find that a reasonable person of ordinary intelligence would understand both the meaning of the word "knife" and the meaning of the phrase "dangerous or deadly cutting instrument" as used in the statute. We also find that the statutory definition gives reasonable notice to both the public and to law enforcement officers about the type of cutting instruments that should not be possessed by convicted felons.

We note that K.S.A. 2018 Supp. 21-6304(c) contains common words and phrases that are not difficult to understand. In particular, the plain language of the statute expressly addresses the possession of cutting instruments that are "dangerous or deadly" in character and no other types of cutting instruments. Notably, subsection (c)(1) lists several examples of the type of dangerous or deadly objects that qualify as a "knife" under the statute. A person of ordinary intelligence should understand that all of the types of cutting instruments that are listed are objects that have a sharp blade, edge, or point that can be used to injure or kill another person.

Although there may be other legitimate uses for such cutting instruments, the characteristics shared by the prohibited items is that they are either designed for—or are commonly used as—weapons. As such, we do not find the language of K.S.A. 2018 Supp. 21-6304(c) to be vague or ambiguous. Rather, we find that it provides fair notice to people of ordinary intelligence about the type of dangerous items that should not be possessed by convicted felons and provides sufficient standards for its enforcement to prevent arbitrary or discriminatory enforcement. Furthermore, we find that K.S.A. 2018 Supp. 21-6304(c) is constitutional as applied to Baston since it is undisputed that he was carrying a machete—which is commonly defined as a large knife—at the time he was arrested.

8

*Possession of a Weapon by a Convicted Felon*

Baston also contends that the State failed to present sufficient evidence at trial that he possessed a weapon as defined in K.S.A. 2018 Supp. 21-6304(c)(1). His arguments regarding this issue are substantially similar to those set forth in support of his argument regarding the constitutionality of the statute. In response, the State contends that it presented sufficient evidence to support Baston's conviction of criminal possession of a weapon. In particular, it argues that the evidence was sufficient to establish that Baston was carrying a machete that fits the statutory definition of a knife.

When a verdict is challenged for insufficiency of evidence, we do not reweigh the evidence nor do we pass on the credibility of witnesses. Instead, we review the evidence in the record on appeal in the light most favorable to the prevailing party—in this case the prosecution—to determine whether the verdict is supported by the evidence. *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018). It is only in rare cases in which no reasonable fact-finder could find that a defendant committed the crime beyond a reasonable doubt that a guilty verdict will be reversed. *State v. Torres*, 308 Kan. 476, 488, 421 P.3d 733 (2018).

Here, there was evidence presented at trial that Baston was in possession of a machete. Moreover, one of the law enforcement officers described the machete as a "bladed weapon or bladed knife with a smooth sharpened edge on one side and a saw blade on the opposite side." The officer also testified that the machete had a blade 11 inches long. In addition to a photograph of the machete, the State showed the actual machete to the jury, and the district court admitted it into evidence.

It is important to note that Baston does not dispute that he was in possession of a machete. Instead, he suggests that it is not a "stabbing instrument" because of its shape. But K.S.A. 2018 Supp. 21-6304 does not use the term "stabbing instrument" in

9

describing what is prohibited to be possessed by a convicted felon. Rather, the statute uses the term "dangerous or deadly cutting instrument" to describe what is prohibited. K.S.A. 2018 Supp. 21-6304(c)(1). We conclude that a reasonable finder of fact could conclude that a machete is a dangerous and potentially deadly cutting instrument.

As indicated in the previous section, a machete is by definition a "large heavy knife with a broad blade, used as a weapon and an implement for cutting vegetation." American Heritage Dictionary 1050 (5th ed. 2016). As such, it meets the statutory definition of a weapon as defined in K.S.A. 2018 Supp. 21-6304(c)(2). Thus, we conclude that there was sufficient evidence presented at trial upon which the jurors could find beyond a reasonable doubt that Baston possessed a weapon—in the form of a knife—in violation of K.S.A. 2018 Supp. 21-6304.

*Interference with Law Enforcement*

Next, Baston contends that the State presented insufficient evidence to support his conviction for interference with law enforcement. Baston argues that the State failed to present evidence that law enforcement was attempting to serve him with a felony arrest warrant. The State contends that it presented sufficient evidence at trial upon which a reasonable jury could convict Baston of interference with law enforcement. Likewise, the State points out that Baston stipulated to the existence of a felony warrant before the start of trial.

Although Baston recognizes that his attorney "apparently agreed, before trial, to stipulate to the felony status," he claims that this stipulation is not binding upon him because he did not personally stipulate and "no stipulation was ever presented to the jury in any form." Even so, Baston acknowledges that a panel of this court held in *State v. Johnson*, 53 Kan. App. 2d 734, 743, 391 P.3d 711 (2017), "that the failure to have the

10

defendant personally acknowledge a stipulation does not violate the defendant's right to a jury trial."

Furthermore, in *State v. Gehring*, No. 111,346, 2015 WL 1310825 (Kan. App. 2015) (unpublished opinion), a panel of this court addressed an issue similar to the one presented in this case. In *Gehring*, the defendant stipulated before trial "that a felony warrant was issued for his arrest." 2015 WL 1310825, at *1. As a result of the stipulation, the State made sure that the witnesses it presented at trial "would just say a warrant was out for [the defendant's] arrest but would not specify what type of warrant." 2015 WL 1310825, at *2.

After his conviction, the defendant in *Gehring* argued that there was insufficient evidence to convict him of interference with law enforcement. Similar to this case, the defendant argued that the district court erred because "his stipulation that the warrant was a felony warrant was never read to the jury." 2015 WL 1310825, at *2. A panel of this court disagreed.

The *Gehring* panel found that "the entire purpose of the stipulation" was to keep potentially prejudicial evidence of the outstanding felony warrant from being discussed in front of the jury. 2015 WL 1310825, at *5. The panel also found that "'nothing in either law or logic compels us to reverse a conviction when the defendant enters into a stipulation on an element and then seeks a windfall from the government's failure to formally read the stipulation to the jury.'" 2015 WL 1310825, at *5 (quoting *United States v. Harrison*, 204 F.3d 236, 242 [D.C. Cir. 2000]). Alternatively the panel explained that even if the district court erred in doing so, "a litigant may not invite error and then complain of the error on appeal." 2015 WL 1310825, at *5.

Next, the *Gehring* panel considered whether the stipulation was knowingly and voluntarily made. Quoting the Kansas Supreme Court's opinion in *White v. State*, 222

11

Kan. 709, 713, 568 P.2d 112 (1977), the panel found no requirement "'that a trial court must interrogate and advise a defendant, who is represented by counsel, before accepting and approving stipulations as to the evidence, and we are not prepared to initiate such a requirement.'" 2015 WL 1310825, at *6. Consequently, the panel concluded that the district court had no duty to "advise [the defendant] of his rights before accepting a stipulation to evidence." 2015 WL 1310825, at *6.

Similarly, we find no error in this case. A review of the record reflects that Baston's trial counsel was exercising a sound strategy on behalf of his client in stipulating that the State did not need to establish that it was attempting to serve an outstanding felony warrant at the time of his arrest. The following discussion was held on the record and in the presence of Baston prior to trial:

"[PROSECUTOR]: I would ask that they stipulate that the arrest warrant that the officers were attempting to serve was a felony arrest, and that evidence came out at preliminary hearing. Again, that's a situation that I cannot present to the jury that it was a felony arrest, but it does implicate a felony versus misdemeanor interference.

"THE COURT: Mr. Hall [defense counsel]?

"MR. HALL: Judge, I think there's evidence of that in the preliminary hearing transcript. We would stipulate—it was a felony warrant. Even though—I mean, I think it's a sentencing issue and not necessarily a guilt phase issue, but still . . . .

"THE COURT: I think that may be correct."

Like the panel in *Gehring*, we find that Baston cannot challenge the felony status of his outstanding warrant after stipulating to its existence. See *Gehring*, 2015 WL 1310825, at *5. Based on a review of the record, it is apparent that the State was prepared to present evidence of the outstanding warrant if it needed to do so but there was no need to introduce such potentially prejudicial evidence in light of Baston's stipulation. Like the

panel in *Gehring*, we find nothing in either law or logic that compels us to reverse under the circumstances presented in this case. Accordingly, we conclude that given the pretrial stipulation that the warrant the law enforcement officers were attempting to serve on Baston at the time of his arrest was for a felony, the State presented sufficient evidence upon which a reasonable jury could convict him of felony interference with a law enforcement officer.

*Jury Instructions*

Baston asserts that the district court erred when it failed to instruct the jury of the felony status of the warrant that the law enforcement officers were attempting to serve at the time of his arrest. Despite the stipulation addressed in the previous section of this opinion, Baston argues that this was a fact question for the jury to decide. The State responds that even if the classification of the warrant is an essential element of the crime, there was no instructional error. Again, the State points to the stipulation entered before trial and argues that it rendered any problem with the jury instruction to be harmless.

Baston recognizes that in *State v. Scott*, 28 Kan. App. 2d 418, 426, 17 P.3d 966 (2001), a panel of this court held that the failure to instruct on the felony status element of interference with law enforcement was not clearly erroneous. He also recognizes that the current version of the "PIK instruction does not recommend that the felony or misdemeanor status of the warrant be submitted to the jury as an element of the charge." See PIK Crim. 4th 59.030. Still, Baston suggests that *Scott* was wrongly decided and that the PIK instruction should be modified.

"When analyzing jury instruction issues, we follow a three-step process:

"'(1) determining whether the appellate court can or should review the issue, *i.e.*, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) considering the merits of the claim to determine whether error occurred below; and (3)

13

assessing whether the error requires reversal, *i.e.*, whether the error can be deemed harmless.' [Citation omitted.]" *State v. McLinn*, 307 Kan. 307, 317, 409 P.3d 1 (2018).

Whether a party has preserved a jury instruction issue affects our inquiry at the third step. 307 Kan. at 317. "No party may assign as error the giving or failure to give an instruction . . . unless the party objects thereto before the jury retires to consider its verdict . . . unless the instruction or the failure to give an instruction is clearly erroneous." K.S.A. 2018 Supp. 22-3414(3). Here, Baston did not object at trial so the clearly erroneous standard applies. Thus, we will only reverse the district court if an error occurred and we are firmly convinced that the jury would have reached a different verdict if the instruction error had not occurred. The party claiming a clear error—in this case Baston—has the burden to demonstrate the necessary prejudice. See *McLinn*, 307 Kan. at 318.

K.S.A. 2018 Supp. 21-5904(a)(3) defines "interference with law enforcement" as "knowingly obstructing, resisting or opposing any person authorized by law to serve process in the service or execution or in the attempt to serve or execute any writ, warrant, process or order of a court, or in the discharge of any official duty." The classification of this crime then depends on what type of warrant the authorized person attempted to serve at the time of the interference. K.S.A. 2018 Supp. 21-5904(b)(5)(A)-(B). As indicated in the previous section, the record reflects—and the parties stipulated to the fact before trial—that the law enforcement officers were attempting to serve a felony warrant at the time of Baston's arrest.

It is undisputed that Instruction No. 8—which set forth the elements of interference with law enforcement—simply referred to an "arrest warrant" that was being served and did not specify that the warrant was for a felony. Furthermore, a review of the record reveals that Instruction 8 closely followed the Pattern Instructions of Kansas (PIK). See PIK Crim. 4th 59.030 "Interference with Law Enforcement–Obstructing Legal

14

Process." It is important to recognize that our Supreme Court "'strongly recommend[s] the use of PIK instructions, which knowledgeable committees develop to bring accuracy, clarity, and uniformity to instructions.'" *State v. Butler*, 307 Kan. 831, 847, 416 P.3d 116 (2018).

PIK Crim. 4th 59.030 does not include the warrant's classification as an element to be decided by the jury. See *Scott*, 28 Kan. App. 2d at 426. Instead, the pattern instruction includes the following four elements:  (1) a law enforcement officer was authorized to act; (2) the defendant knowingly prevented or obstructed the execution of that act; (3) the defendant knew or should have known that the officer was authorized to act; and (4) the events occurred in the county in which the charge was filed. PIK Crim. 4th 59.030. Thus, the plain language of PIK Crim. 4th 59.030 does not support Baston's assertion that juries must also be instructed to determine whether an outstanding warrant was issued for the alleged commission of a felony or misdemeanor.

Furthermore, we do not find it appropriate for Batson to raise this issue on appeal when he stipulated that the law enforcement officers were attempting to serve an outstanding felony warrant on him at the time of his arrest. Even if we assume—without deciding—that the classification of the warrant should be proved by the State under normal circumstances, the State did not need to prove the felony nature of the warrant in this case in light of Baston's stipulation. In fact, Baston's attorney represented to the district court before trial that his client objected to evidence being presented to the jury that the officers were attempting to serve a felony warrant. Moreover, Baston benefited from the stipulation by keeping this potentially damaging information from the jury. Thus, we find it was not error—much less clear error—for the district court not to add language regarding the warrant's classification to Instruction No. 8.

Baston also contends that the district court erred when it denied his request to instruct the jury that the State must also prove that a defendant substantially hindered law

15

enforcement officers in attempting to serve the warrant. Because Baston requested the additional language, we review this contention to determine whether the giving of the requested instruction would have been factually and legally appropriate. If so, we then must review the entire record to determine whether there is a reasonable probability that the outcome of the trial would have been different had the error not occurred. *State v. Plummer*, 295 Kan. 156, 163, 283 P.3d 202 (2012).

Baston desires to graft language from the pattern instruction on "Interference with Law Enforcement—Obstructing Official Duty"—PIK Crim. 4th 59.040—into the pattern instruction on "Interference with Law Enforcement—Obstructing Legal Process"—PIK Crim. 4th 59.030. In particular, he argues that the district court should have instructed the jury that his actions "substantially hindered or increased the burden of the officer in the performance of the officer's official duty." In support of his argument, Baston cites *State v. Parker*, 236 Kan. 353, 364, 690 P.2d 1353 (1984). Specifically, he quotes *Parker* for the proposition that a "'defendant charged with obstruction of official duty must have substantially hindered or increased the burden of the officer in carrying out his official duty.'" 236 Kan. at 364.

Nevertheless, Baston candidly acknowledges that *Parker* is an "official duty" case and not a "legal process case" like the present case. He also recognizes that *State v. Brown*, 305 Kan. 674, 690, 387 P.3d 835 (2017)—which is the most recent case applying *Parker*—is also an "official duty" case and did not involve the service of legal process. Hence, despite his argument to the contrary, we do not find *Parker* or *Brown* to be "binding Supreme Court precedent" in this case.

Material to the present case, K.S.A. 2018 Supp. 21-5904(a)(3) defines interference with law enforcement as "knowingly obstructing, resisting or opposing any person authorized by law to serve process in the service or execution or in the attempt to serve or execute any writ, warrant, process or order of a court, or in the discharge of any official

16

duty." Neither the words "substantial hindrance"—nor similar words—are found within the plain language K.S.A. 2018 Supp. 21-5904(a)(3). As our Supreme Court has held on numerous occasions, we are to "read statutory language as it appears, without adding or deleting words." *State v. Lloyd*, 308 Kan. 735, 742, 423 P.3d 517 (2018) (citing *State v. Gray*, 306 Kan. 1287, 1294, 403 P.3d 1220 [2017]). Here, we find nothing in the plain language of K.S.A. 2018 Supp. 21-5904(a)(3) to support Baston's argument, and we reject the temptation to add elements to the crime that have not been articulated by our Legislature.

Even if we were to fall to the temptation to add language to the statute, we are convinced from a review of the entire record that the outcome of this case would remain the same. We note that Baston fled when he saw uniformed officers approaching, and he ran toward a marshy area behind Alumbaugh's residence. Further, Baston failed to stop when an officer shouted at him, and he tried to hide himself by lying in stagnant water and covering himself with grass. A canine officer searched for Baston for several minutes and warned him about the dog. Ultimately, the officer released his dog, and the officers located Baston hiding in tall grass about 150 yards away from where he was originally standing. Even after the officers located Baston, he lunged at one of the officers as they attempted to restrain him—causing one of the officers to fall into the mud. Accordingly, even if the district court had instructed the jury on substantial hindrance or increased burden to the officers while they attempted to serve him with an arrest warrant, there is not a reasonable probability that the outcome of the trial would have been different.

Affirmed.

17