IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 113,228

STATE OF KANSAS,
*Appellee*,

v.

DAQUANTRIUS S. JOHNSON,
*Appellant.*

SYLLABUS BY THE COURT

1.

Structural error occurs when the error interferes with the court's basic function and denies a defendant the basic protections afforded during criminal trial. Structural errors are so pervasive they defy analysis by harmless-error standards and require automatic reversal.

2.

An isolated incident of a trial judge nodding off during a portion of testimony where no objections were made does not create structural error requiring automatic reversal.

3.

When a defendant stipulates to an element of a crime, the defendant has effectively waived his or her right to a jury determination of that element. Thus, a valid jury trial waiver—limited to the stipulated element or elements—is required.

Review of the judgment of the Court of Appeals in 53 Kan. App. 2d 734, 391 P.3d 711 (2017). Appeal from Sedgwick District Court; BENJAMIN L. BURGESS, judge. Opinion filed November 27, 2019.

Judgment of the Court of Appeals reversing the district court is reversed and the case is remanded to the Court of Appeals with directions. Judgment of the district court is affirmed in part and reversed in part as to the issues subject to review.

*Samuel Schirer*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Matt J. Maloney*, assistant district attorney, argued the cause, and *Marc Bennett,* district attorney, and *Derek Schmidt,* attorney general, were with him on the briefs for appellee.

The opinion of the court was delivered by

STEGALL, J.: Daquantrius Johnson was charged with criminal possession of a firearm, aggravated assault, and felony criminal discharge of a firearm in Sedgwick County District Court. A jury convicted Johnson of all three counts, and the court imposed a 43-month sentence, 12 months' postrelease supervision, and lifetime registration under K.S.A. 2013 Supp. 22-4905(b)(2). The Court of Appeals reversed Johnson's convictions and remanded for a new trial, holding that the trial judge "nodding off" on the first day of trial was structural error. The lower court also held that the district court did not have to obtain a limited jury trial waiver before accepting Johnson's stipulation to an element of the possession charge. We reverse both of the Court of Appeals' holdings and remand to that court for further consideration of all issues raised by Johnson's appeal.

FACTUAL AND PROCEDURAL BACKGROUND

Voir dire lasted most of the first day of Johnson's trial. The jury was seated at 3:15 in the afternoon, at which point the court took a recess to discuss preliminary instructions with counsel. During that recess, the parties and the court agreed that Johnson wanted to make an evidentiary stipulation and the court would inform the jury that Johnson had

2

been adjudicated as a juvenile offender for an act that, if done by an adult, would constitute a felony. The court did not take a jury trial waiver from Johnson.

The court reconvened the jury at 3:30 and gave the jury its preliminary instructions. Included was the following:

> "[THE COURT:]  As to element two, ladies and gentlemen, the parties have prepared a stipulation. A stipulation is simply an agreement among the parties that a certain fact is true and no other evidence needs to be given to prove it. The stipulation reads as follows:  Comes now on this 27th day of October, 2014, the Defendant, Daquantrius S. Johnson, personally and by and through his attorney, Terry Beall, stipulate for the purposes of admission into evidence at the jury trial in the above-captioned case as follows:  That the Defendant, Daquantrius Johnson, was adjudicated a juvenile offender for an act which, if done by an adult, would constitute the commission of a felony in Sedgwick County District Court on July 2, 2012. He was not found to have been in possession of a firearm at the time of the prior crime and has not had the prior adjudication expunged or been pardoned for such crime. This adjudication prohibited him from owning and possessing a firearm on October 14, 2013. It's signed by the defendant, Mr. Johnson, by his attorney, Mr. Beall, and by Mr. Roush on behalf of the State."

Following this, both parties presented brief opening statements and the State began its case-in-chief by calling the victim, Randall Gifford, as its first witness. While examining Gifford, the State offered five exhibits into evidence—the trial judge admitted all the exhibits into evidence. Next, defense counsel cross-examined Gifford, drawing one relevance objection from the State. The court promptly sustained the State's objection. After this, the court recessed for the day.

The trial resumed the next day, and began with this announcement from the court:

> "THE COURT:  Good morning.

3

"THE JURY: Good morning.

"THE COURT: Ladies and gentlemen, I believe we're ready to get underway on this matter. Before we do that, though, there's something that I want to bring out and discuss, and that is earlier this morning one of the jury members pulled Christine aside and made the observation that during the course of the proceeding in the trial yesterday afternoon I may have been sleeping or nodding off, and the question was raised whether or not Mr. Johnson then could have a fair trial. Christine, I think, explained to the juror that raised that issue that you are the trier of facts and at the conclusion of the case you are the ones that decide all the factual issues and reach a determination as to whether or not Mr. Johnson is guilty or not guilty and whether or not the case has been proven, and that is a correct assessment of the matter.

"As I mentioned to you yesterday in my very preliminary instructions, the role of the judge and the jury are different. You are the trier of facts. I decide what evidence you will hear and what instructions you will receive. I don't believe during the course of this trial yesterday afternoon there were any objections raised that I had to make rulings on that would have been affected by my nodding off. I acknowledge myself, ladies and gentlemen, that I did nod off some. I doubt that I'm the first judge in America that's ever done that.

"And I want to also just observe the fact that I think I mentioned to you actually I graduated from law school in December of 1971, almost 43 years ago. I've probably been involved in as many as 300 jury trials, and over the course of my career I've learned and have gained a great deal of respect for our jury system. I recognize fully that many people—as I indicated in our informal discussions yesterday morning, many people when they get a jury summons the first reaction is, golly, why do I have to do this, and yet at the same time in my 43 years of experience most jurors I find are very conscientious about their role and their responsibility. They take their job seriously. And, quite honestly, I'm glad that this matter was brought out in the open so that it can be dealt with.

"In that regard, the defendant, of course, is the one who's affected and is the one who is entitled to have a fair trial. Obviously the State is entitled to have a fair trial also. It is a constitutional right for the defendant to be given a fair trial. So the question is

4

whether or not the defendant now wants to make a motion for a mistrial based on this conduct. So, Mr. Beall, is it your wish to request a mistrial?

"MR. BEALL:  Not at this time. We're ready to proceed.

"THE COURT:  Very well. With that then we'll proceed on. Mr. Roush, you may call your next witness.

"MS. HART:  Your Honor, the State calls Kayla Wilson.

"THE COURT:  And I'll try to do better."

The trial continued and the jury ultimately found Johnson guilty of all three crimes as charged. The court imposed a 43-month sentence, 12 months' postrelease supervision, and lifetime registration under K.S.A. 2013 Supp. 22-4905(b)(2). On appeal, Johnson raised many issues, most of which are not before us. Because the panel reversed Johnson's conviction after holding that the trial judge had committed structural error, it did not address all of Johnson's remaining claims on appeal. The panel did, however, address whether a valid jury trial waiver must accompany Johnson's stipulation to an element of one of the charged crimes, holding that such a waiver was unnecessary. See *State v. Johnson*, 53 Kan. App. 2d 734, 735-37, 742-45, 391 P.3d 711 (2017). These are the only two issues before us and we take them up in turn.

ANALYSIS

*Structural Error*

It is unclear whether Johnson or his counsel observed the trial judge nodding off during the afternoon of the first day of trial. But when the trial judge addressed the matter the next day, Johnson did not object to continuing with the trial or move for a mistrial

5

when given the opportunity. Ordinarily, this lack of an objection could preclude our review of the issue. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014) (an argument ordinarily cannot be raised for the first time on appeal). The State has not made a preservation argument, however, and the Court of Appeals decided to consider the issue for the first time on appeal. Given that we review intermediate appellate court decisions to consider issues for the first time on appeal for an abuse of discretion, and given the State does not claim the Court of Appeals abused its discretion by reaching this issue, we will not disturb the lower court's implicit preservation holding. See *State v. Parry*, 305 Kan. 1189, 1192, 390 P.3d 879 (2017) (explaining that "preservation is a prudential rule, rather than a jurisdiction bar" and thus reviewing a Court of Appeals decision to reach or not reach an unpreserved issue for abuse of discretion).

When considering the merits, the Court of Appeals found no caselaw directly on point. In lieu of such precedent, a majority of the panel drew an analogy between the "nodding off" judge in Johnson's trial and a judge who is physically absent from the trial for some period of time. See *Johnson*, 53 Kan. App. 2d at 736-42. Because many instances of a physically absent judge have resulted in a finding of structural error, the majority ruled that "a sleeping judge does not and cannot preside over a trial" and cannot "supervise anything other than his or her dreams." 53 Kan. App. 2d at 738-39. Thus, the court ruled that "[o]bviously, this issue defies harmless error analysis." 53 Kan. App. 2d at 738. Judge Buser disagreed, however, stating that "[a] new structural error standard applied in these situations would be without precedent, unnecessary, and prone to abuse by defense counsel." 53 Kan. App. 2d at 757 (Buser, J., dissenting).

Before us, Johnson reprises these arguments and maintains that the district court judge was not consciously present while nodding off. Therefore the absent judge rubric ought to apply—justifying a finding of structural error here. The State has never contested the finding of error or judicial misconduct. But at the Court of Appeals, the State argued that before judicial misconduct merits reversal, a defendant must show

actual prejudice. And before us, the State appears to have shifted its position slightly, now arguing that the error is constitutionally harmless. Regardless of which reversibility test applies, the threshold question—whether structural error infected Johnson's trial—is a question of law over which we exercise plenary review. *State v. Hill*, 271 Kan. 929, 934, 26 P.3d 1267 (2001), *abrogated on other grounds by State v. Voyles*, 284 Kan. 239, 252-53, 160 P.3d 794 (2007).

A structural error is one that is so pervasive it defies "analysis by 'harmless-error' standards." *Arizona v. Fulminante*, 499 U.S. 279, 309, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991). These errors are "structural defects in the constitution of the trial mechanism," which affect the "entire conduct of the trial from beginning to end." 499 U.S. at 309-10. They prevent the trial court from serving its basic function of determining guilt or innocence and deprive defendants of the "basic protections" of a criminal trial. *Neder v. United States*, 527 U.S. 1, 8-9, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999) (quoting *Rose v. Clark*, 478 U.S. 570, 577-78, 106 S. Ct. 3101, 92 L. Ed. 2d 460 [1986]). Such errors render the trial "'fundamentally unfair,'" requiring automatic reversal. *Neder*, 527 U.S. at 8 (quoting *Rose*, 478 U.S. at 577). So far, the United States Supreme Court has identified "a very limited class of cases" involving structural errors, including: (1) total deprivation of counsel; (2) lack of an impartial trial judge; (3) denial of the right to self-representation at trial; (4) violation of the right to a public trial; (5) erroneous reasonable-doubt instruction; and (6) unlawful exclusion of members of the defendant's race from a grand jury. *Neder*, 527 U.S. at 8; *United States v. Marcus*, 560 U.S. 258, 263, 130 S. Ct. 2159, 176 L. Ed. 2d 1012 (2010); *Fulminante*, 499 U.S. at 310.

Notably, the Supreme Court has not included a judge nodding off (or even a physically absent judge) in its limited class of structural errors. And in Kansas, there is no precedent finding structural error on facts like those before us here. Similarly, there is no federal precedent finding structural error when a judge falls asleep during a criminal jury

7

trial. See, e.g., *United States v. White*, 589 F.2d 1283, 1289 (5th Cir. 1979) (holding that the judge's falling asleep during defense counsel's opening argument was not prejudicial error).

Even if we were to accept the panel's view that a physically absent judge is always structural error, we reject the way the lower court equated what happened during Johnson's trial with a physically absent judge. The record of the time-period in question does not suggest an absent judge—quite the opposite. The court did not read its preliminary jury instructions until 3:30 that afternoon. After the judge administered the lengthy preliminary instructions—15 pages in the trial transcript—the court instructed the parties to give their opening statements. Following opening statements, the court asked the State to call its first witness.

During the State's direct examination, the State offered five exhibits—all of which the trial judge admitted into evidence. When the State finished its direct examination, the judge called upon Johnson to cross-examine the witness. During that cross-examination, the State lodged one objection. The court promptly sustained the objection. After the judge sustained the objection, the defense ended its cross-examination and the judge asked the State for any redirect. The State conducted a brief redirect, and the court recessed for the day. So while the trial transcript contains no notation of when, precisely, the judge was nodding off, it also does not show any lapses of judicial oversight during the window of time in question.

Given this, it is not reasonable to equate the trial judge's nodding off to the facts of the cases relied on by the panel—all involving a judge who physically left the bench. See *Gomez v. United States*, 490 U.S. 858, 876, 109 S. Ct. 2237, 104 L. Ed. 2d 923 (1989) (holding structural error occurred when a magistrate judge presided over jury selection); *Fiechter v. Fiechter*, 97 Kan. 166, 167, 155 P. 42 (1916) (ruling "it ought not to require very much of a showing of prejudice to authorize a new trial" in a civil jury trial where

8

the judge had the clerk preside over arguments); *State v. Beuerman*, 59 Kan. 586, 591, 53 P. 874 (1898) (stating in dictum the trial judge leaving the bench during trial and going into an adjoining room was improper because "there can be no court without a judge, and he cannot even temporarily relinquish control of the court"); *United States v. Mortimer*, 161 F.3d 240, 241-42 (3d Cir. 1998) (holding structural error occurred where a prosecutor tried to make an objection, but the judge had disappeared from the bench); *Peri v. State*, 426 So. 2d 1021, 1027 (Fla. Dist. Ct. App. 1983) (holding it was unworkable to require a showing of prejudice when a trial judge was absent during part of the trial because it would not deter judges from that behavior); *People v. Vargas*, 174 Ill. 2d 355, 367, 370-71, 673 N.E.2d 1037 (1996) (holding it was per se reversible error when a judge left the bench during cross-examination of a witness).

Even in circumstances of actual judicial absence, some courts have refused to apply structural error. See *United States v. Love*, 134 F.3d 595, 605 (4th Cir. 1998) (holding that the trial judge's absence during portions of closing arguments was not structural error that was reversible per se); *Heflin v. United States*, 125 F.2d 700, 700-01 (5th Cir. 1942) (holding no reversible error occurred when the trial judge left the bench for two or three minutes during closing argument); *People v. Garcia*, 826 P.2d 1259, 1266 (Colo. 1992) (holding that the trial judge leaving the court room while videotaped evidence was played to the jury was not reversible error); *People v. Sheley*, 90 N.E.3d 493, 497 (Ill. App. Ct. 2017) (holding a trial judge falling asleep does not constitute per se reversible error); *State v. Scott*, 284 Neb. 703, 723, 824 N.W.2d 668 (2012) (disapproving of the trial judge leaving the courtroom during testimony but holding the defendant did not establish prejudice for reversal); *Coddington v. State*, 254 P.3d 684, 699-700 (Okla. Crim. App. 2011) (holding that a judge's absence during videotaped testimony does not automatically create structural error); *State v. Arguello*, 873 N.W.2d 490, 493-94 (S.D. 2015) (holding that the trial judge leaving the courtroom while the jury watched evidentiary videos did not rise to the level of structural error).

This case does not present us with facts indicating a judge who slipped into any of the deeper phases of sleep. There is no suggestion the trial judge was actually engaged in a full-blown nap on the bench. Certainly a dozing, heavy-lidded, or nodding judge who is struggling to remain awake and alert is no more acceptable or proper than someone in the same state attempting to operate an automobile. Indeed, the State has conceded error or misconduct here, and we have no reason to question that concession. Just like a driver who feels the overwhelming physical need for sleep should immediately get off the road, a responsible judge charged with overseeing a criminal trial who feels the need for sleep, and can no longer successfully put it off, has a responsibility to call a halt to the proceedings. But just as not every dozing driver causes an accident, not every instance of a dozing judge must lead to an automatic reversal.

Unlike a judge who is physically absent from the courtroom, a judge who is fighting to stay awake may still be able to control and respond to events happening in the courtroom. Kryger et al., Principles and Practice of Sleep Medicine 19 (5th ed. 2011) (supporting the view that "sensory processing at some level does continue after the onset of sleep"). This situation is more akin to a judge who—like any human being—succumbs to a distraction. Though less than ideal, distractions happen often on the bench—whether it's conducting legal research on the matters before the court or fact checking the record during a proceeding, they are almost inevitable. We decline to establish a bright-line rule suggesting that anytime a judge misses some courtroom event or word the judge is effectively absent. In the case before us, while the inattention appears significant and serious, it was not so significant or serious to either show up in the transcript or generate objections from the parties. We cannot say the district court judge so abdicated and abandoned his judicial responsibilities that he was effectively absent from the courtroom. As a result, Johnson's trial did not suffer from structural error.

Having determined that there was no structural error, we are left to consider the proper framework for the remaining reversibility analysis that must follow conceded error or misconduct. We have recently clarified that the party bearing the burden of proving prejudice—or lack thereof—depends on whether the failure below is classified as "judicial misconduct" or "judicial comment error." *State v. Boothby*, 310 Kan. 619, 626, 448 P.3d 416 (2019). In *Boothby*, the defendant complained of the trial judge's improper comment during voir dire. There, we held that we will review allegedly inappropriate comments by a trial judge as "judicial comment error" under our *Chapman/Ward* constitutional harmlessness test. 310 Kan. at 628-29; see *State v. Ward*, 292 Kan. 541, 561, 569, 256 P.3d 801 (2011) (citing *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 [1967]).

We distinguished the reversibility analysis for "judicial comment error" from our more traditional "judicial misconduct" reversibility standard, which puts the burden on the party alleging error to show prejudice. We found that erroneous remarks in the form of "judicial comment error" resemble prosecutorial error. Thus, the "logic behind *Sherman*'s 'error and prejudice' rubric for prosecutorial error applies with equal force to judicial comment error." *Boothby*, 310 Kan. at 627.

We expressly reserved, however, the category of "judicial misconduct" for "any judicial error that implicates the right to a fair trial and does not concern a jury instruction or legal ruling." *Boothby*, 310 Kan. at 626. Because Johnson does not complain of any remarks made by the trial judge, this case fits into our generic "judicial misconduct" category. So, Johnson must demonstrate that the misconduct prejudiced his substantial rights. See *Boothby*, 310 Kan. at 625 (citing *State v. Miller*, 308 Kan. 1119, 1154, 427 P.3d 907 [2018]). But because the Court of Appeals has yet to consider whether Johnson has met this burden, we remand this issue for the panel to examine and rule upon in the first instances. See *Miller*, 308 Kan. at 1154. The analysis must include a consideration of the overall strength of the evidence against Johnson and the impact of any curative steps

11

taken by the trial judge to purge the taint of the misconduct. See *State v. Gaither*, 283 Kan. 671, 684, 156 P.3d 602 (2007) (finding judge's apology and offer to excuse offended prospective jurors "purged the taint of the misconduct").

*Jury Trial Waiver*

Next, Johnson argues the Court of Appeals erred in holding the district court was not required to obtain a jury trial waiver before accepting his stipulation to an element of one of the crimes charged. Whether Johnson's stipulation constituted a knowing and voluntary waiver of his right to a jury trial on this element is a question of law subject to unlimited appellate review. *State v. Rizo*, 304 Kan. 974, 979, 377 P.3d 419 (2016) (quoting *State v. Beaman*, 295 Kan. 853, 858, 286 P.3d 876 (2012) ("'But when the facts of the district court's determination to accept a jury trial waiver are not disputed, the question whether the defendant voluntarily and knowingly waived the jury trial right is a legal inquiry subject to unlimited appellate review.'").

The State suggests the stipulation by itself was not tantamount to a guilty plea and did not require a jury trial waiver at all. We disagree. The Fifth and Sixth Amendments to the United States Constitution "entitle [] criminal defendant[s] to 'a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.'" *Apprendi v. New Jersey*, 530 U.S. 466, 476-77, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) (citing *United States v. Gaudin*, 515 U.S. 506, 510, 115 S. Ct. 2310, 132 L. Ed. 2d 444 [1995]). And when a defendant stipulates to an element of a crime, the defendant has effectively given up his or her right to a jury trial on that element. *United States v. Smith*, 472 F.3d 752, 753 (10th Cir. 2006) (quoting *United States v. Mason*, 85 F.3d 471, 472 [10th Cir. 1996]).

We have consistently held that jury trial waivers "should be strictly construed to ensure the defendant has every opportunity to receive a fair and impartial trial by jury."

See, e.g., *Beaman*, 295 Kan. at 858. And because every defendant has the fundamental right to a jury trial, courts cannot accept a jury trial waiver "'unless the defendant, after being advised by the court of his right to trial by jury, personally waives his right to trial by jury, either in writing or in open court for the record.'" *State v. Irving*, 216 Kan. 588, 589-90, 533 P.2d 1225 (1975) (noting that a waiver will not be presumed from a silent record).

In sum, the district court judge's admitted sleeping was misconduct but did not rise to the level of structural error. But the district court did err when it accepted Johnson's elemental stipulation without first obtaining a knowing and voluntary jury trial waiver on the record. Therefore, we remand Johnson's appeal to the Court of Appeals for further consideration of all issues Johnson raised on appeal in light of our decision today.

Reversed and remanded with directions.

JOHNSON, J., not participating.[1]

---

[1]**REPORTER'S NOTE:** Justice Johnson heard oral arguments but did not participate in the final decision in case No. 113,228. Justice Johnson retired effective September 6, 2019.