MODIFIED OPINION[1]

NOT DESIGNATED FOR PUBLICATION

No. 125,961

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ANTHONY SEYMOUR,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; SETH L. RUNDLE, judge. Oral argument held March 5, 2024. Original opinion filed May 24, 2024. Modified opinion filed July 31, 2024. Reversed and remanded.

*Mark T. Schoenhofer*, of Wichita, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before GARDNER, P.J., MALONE, J., and TIMOTHY G. LAHEY, S.J.

PER CURIAM: Anthony Seymour appeals his convictions of aggravated kidnapping, rape, aggravated criminal sodomy, and aggravated robbery following a jury

---

[1]**REPORTER'S NOTE**: Opinion No. 125,961 was modified by the Court of Appeals on July 31, 2024, in response to the State's motion for rehearing or modification. The modified language is incorporated throughout the opinion.

1

trial at which he represented himself. Seymour claims the district court violated his right to counsel under the Sixth Amendment to the United States Constitution by refusing his request for court-appointed counsel after he indicated he wanted to discharge his retained counsel. He also claims the district court abused its discretion by denying a continuance to give his newly hired attorney time to prepare for trial. The State contends the district court properly advised Seymour when honoring his request for self-representation that the trial would not be delayed solely because Seymour hired a new attorney.

Our review of the record shows that the district court gave Seymour the choice of continuing with his retained counsel or representing himself, but the court ignored Seymour's request for a court-appointed attorney because he did not show justifiable dissatisfaction with his retained counsel. But Kansas law states that a defendant only needs to show justifiable dissatisfaction with appointed counsel, not retained counsel, before the court should consider the defendant's request for new appointed counsel. Thus, the district court violated Seymour's Sixth Amendment right to counsel when it ignored his request for a court-appointed attorney to replace his retained counsel. And the district court compounded its error when Seymour asked to represent himself because the court failed to advise Seymour that he could change his mind about proceeding pro se and request a court-appointed attorney. Because Seymour was denied his constitutional right to counsel, we must reverse his convictions and remand for further proceedings.

We issued our original memorandum opinion on May 24, 2024. The State timely filed a motion for rehearing or modification, and Seymour responded to the motion. This court ordered supplemental briefing, and both parties complied with that order. We also granted the State's request to supplement the record on appeal. We now issue this modified opinion to more thoroughly address some of the State's arguments, but the outcome and our overall reasoning remain unchanged.

FACTUAL AND PROCEDURAL BACKGROUND

In November 2019, the State charged Seymour with one count each of aggravated kidnapping, rape, aggravated criminal sodomy, aggravated robbery, and criminal possession of a weapon by a convicted felon. The State alleged that Seymour abducted L.F. at knifepoint while she was walking home from a grocery store, then made her perform oral sex on him and forcibly raped her. The weapons charge was later dismissed. Seymour submitted a financial affidavit of indigency at his first appearance hearing on November 21, 2019. Seymour stated in the affidavit that he had been unemployed for eight months and had no funds to hire an attorney. He also stated in the affidavit that he lived with his mother, but she had no income. The district court found that Seymour was indigent and appointed counsel from the public defender's office to represent Seymour.

*Private counsel enters appearance for Seymour.*

In December 2019, Charles O'Hara entered his appearance as attorney of record. O'Hara represented Seymour for about 13 months, during which Seymour waived his right to a preliminary hearing in March 2020 and then pleaded not guilty at an arraignment hearing in November 2020. At arraignment, the district court scheduled a jury trial to begin on February 8, 2021. Two weeks before the scheduled jury trial, O'Hara moved to withdraw as counsel. The district court granted O'Hara's motion and set the case for a status conference on February 26, 2021.

Steven Douglas Mank entered his appearance for Seymour on February 25, 2021. Mank represented Seymour for the next several months, during which the district court set jury trial control dates that were later continued at Seymour's request. On June 1, 2021, the district scheduled a firm jury trial date of December 6, 2021.

During Mank's representation, Seymour filed several pro se motions, leading to a motion for ineffective assistance of counsel filed on December 2, 2021. In the motion, Seymour made several complaints about Mank's representation, including that Mank had failed to provide discovery, investigate the case, prepare a defense, file pretrial motions, and communicate with Seymour about the case. Seymour asked the district court to remove Mank from the case and appoint a "pro bono attorney."

The district court held a hearing to consider both the State's request for a continuance of the jury trial due to the unavailability of a witness and Seymour's pro se motion for ineffective assistance of counsel. The district court began by asking Seymour if he was "asking to have court-appointed counsel, or are you asking for something else?" Seymour responded by repeating the complaints from his motion about Mank's representation. Mank disputed Seymour's complaints, stating that he had either provided Seymour with the discovery as requested or offered to review it with him in person. At one point, Seymour stated Mank had told "numerous lies," then Mank immediately asked to withdraw from the case due to "a complete and utter breakdown of communication" and because Seymour had called him "a liar in open court."

The district court advised Seymour that he needed to show a justifiable dissatisfaction to be entitled to appointment of new counsel and that Mank had gone "above and beyond what was required" by providing Seymour with any discovery. Seymour countered that he was dissatisfied with Mank because he "made a promise" and then failed to follow through. The State asked for clarification on Seymour's requested remedy, to which Seymour stated, "I want a new lawyer. I want a pro bono lawyer, because I've had a public defender before." The district court ultimately found that Seymour's complaints about Mank failed to establish "any justifiable dissatisfaction" to remove Mank from the case. Mank then asked the district court to find that a breakdown of communication had occurred. The district court responded that it understood Mank's

concerns but still denied his request to withdraw from the case. The district court granted the State's request for a continuance and rescheduled the trial to February 14, 2022.

*Seymour begins representing himself.*

A week later, Seymour made several more pro se filings, including a "Memorandum" addressed to Mank stating he was being fired and that Seymour had advised his family to stop paying Mank. Seymour also filed a "Motion For Pro Se (Self Representation)," invoking his right to self-representation under the Sixth Amendment.

The district court heard Seymour's motion for self-representation on January 6, 2022, and Mank appeared with Seymour at the hearing. The hearing began with Seymour affirmatively stating he wanted to act as his own attorney. The district court then stated it was "required to go over what are called the *Lowe* factors." See *State v. Lowe*, 18 Kan. App. 2d 72, 76-77, 847 P.2d 1334 (1993). The district judge explained:

> "So if a person wants to represent themselves, the district court judge is required to inform the defendant of the following things. What these come down to is, acting as your own attorney is extremely risky, and in many circumstances, is a bad idea.
>
> "First of all, at any time if you do represent yourself, you can change your mind and hire an attorney to represent you. In this case, you have already hired an attorney, and I've denied your motion to have a court-appointed attorney because you have hired counsel, and I did not find that there was a ground[] for you to be dissatisfied with the services to the point of appointing counsel. *So you've hired Mr. Mank. If you act as your own attorney and then change your mind, you can have Mr. Mank represent you. But, those are basically going to be your two choices.*
>
> "Second, I will not postpone court hearings at any time for the reason that you've hired a different attorney down the road. So if, down the road, you decide to hire a different attorney, you can do that, but it's not going to result in a delay in the trial and the proceedings.

"Third, I can and will terminate your self-representation if you deliberately engage in serious and obstructionist misconduct before the Court or in any proceeding.

"Fourth, the Court considers it detrimental for you to not employ counsel to represent you. Again, basically acting as your own attorney is a bad idea. That's what I believe 'detrimental' means.

"Fifth, if you do represent yourself, you must follow all of the legal rules that apply to the trial in a criminal case.

"Sixth, there the numerous dangers and disadvantages of self-representation including the following:

"(a) The law provides for numerous pretrial motions available to a defendant, which are of a technical nature, and the advantage of which you may lose if you represent yourself, unless you discover those on your own and file them.

"(b) Your vocabulary may impede clear communication with the court, opposing counsel, and the jury.

"(c) The district attorney will not assist you in defending your case.

"(d) The Court will not act on your behalf in asserting objections or making appropriate motions where it would ordinarily be the duty of the attorney to call those matters to the Court's attention.

"(e) The rules of law are highly technical and will not be set aside because you are acting as your own attorney.

"(f) You may waive constitutional, statutory, or common law rights unknowingly.

"(g) If you are in custody, it will be difficult for you to locate witnesses, interview them, prepare subpoenas, and have them served.

"(h) I'm required to advise you of the maximum sentences here, which, since there are three severity level 1 counts, add up to well over 100 years in prison, 653 months on a severity level 1 conviction is the maximum prison sentence, along with a fine of up to half a million dollars, and lifetime post-release supervision. Since there are multiple counts, those counts could be run consecutive, which would make the maximum sentence twice 653 months. That's 1,306 months. It's my understanding you're about 60 years old, and that's well over 100 years." (Emphasis added.)

Seymour stated he had no further questions and confirmed that it was still his desire to act as his own attorney. Thus, the district court granted Seymour's request and

allowed Mank to withdraw from the case. Before the hearing ended, Seymour asked the district court to appoint an investigator, which the court noted would "effectively lead to a delay in the trial." After further discussion, the district court granted Seymour's request to appoint an investigator to be paid by the Board of Indigents' Defense Services (BIDS). A status conference was later scheduled for April 18, 2022.

At the hearing on April 18, 2022, the State began by stating it was ready to set a firm trial date. Seymour said he needed more time because the BIDS investigator had only recently contacted him and received discovery. The district court agreed to set another control date for June 13, 2022, which Seymour said, "should be enough time." Before the hearing ended, Seymour asked the district court to approve a financial affidavit so that he could seek a waiver of the filing fee for his offender registration in another case. Seymour explained that his mother had recently passed away and he was trying to handle her legal affairs, so he had no money until her will was processed. The district court agreed to approve the affidavit for Seymour's upcoming registration period, but the court observed that Seymour "may not be indigent in the near future, so you will potentially have to continue paying that fee after that."

At the June 13 hearing, Seymour explained that he planned to hire an attorney and that his private investigator had not begun working on his case yet. Seymour said he had spoken with two attorneys but was undecided on which to hire, noting that he could pay for an attorney "by the end of this month or the 1st of July," depending on when the money from his mother's will could be distributed. The district court asked Seymour whether he had funds to hire an attorney "right now," and Seymour responded, [N]ot right now, no." The district court pointed out that Seymour may no longer be eligible for a taxpayer-funded private investigator depending on how much money he received, which Seymour acknowledged by saying, "Right. Right." The district court then asked Seymour, "[I]f, for some reason, you cannot hire an attorney, are you going to represent yourself at trial?" Seymour responded affirmatively.

After further discussion about the parties' calendars, the district court set a firm trial date for August 1, 2022. The district court advised Seymour that "when you go in to hire whoever it is you're going to hire, you need to disclose to them that you decided to represent yourself, but I told you that if you changed your mind, you would not get a delay in the proceedings." Seymour countered that "[w]hoever I hire, they're not going to be ready," and "I know that for a fact." The district court reminded Seymour that it had previously advised him that there would be no postponements permitted because counsel was newly brought into the case. Seymour responded that he only chose to represent himself "because of the fact Mank wasn't doing his job." Before concluding the hearing, the State asked the district court to set a pretrial status conference in early July "so that we can at least find out where he's at before we start issuing subpoenas." After consulting the parties, the district court scheduled a hearing for July 18, 2022.

*The district court denies a trial continuance to Seymour's new attorney.*

On July 13, 2022, Mark Schoenhofer entered his appearance for Seymour and promptly emailed the district court requesting a trial continuance. The district court continued the scheduled status conference to July 21, 2022. The State filed a written response opposing a continuance, referencing the previous delays and continuances that had resulted from Seymour deciding to fire his retained attorneys and represent himself.

At the hearing, the district court considered the parties' arguments on the request for a trial continuance. Schoenhofer asked the district court to continue the trial to December or at least "late October or November" because it was a complex case and he needed more time to prepare. Schoenhofer said he did not know that the district court had advised Seymour there would be no further continuances, stating he only learned the trial date after entering his appearance in the case. Schoenhofer said when Seymour told him the date of the next hearing, Schoenhofer had remarked that he would need a

8

continuance, to which Seymour responded, "'I understand, and that's fine with me.'" The State opposed a trial continuance, pointing out that Schoenhofer was Seymour's third private attorney—and fourth overall—and that the district court had admonished Seymour that no continuances would be granted solely because he hired a new attorney. The State also said the victim and her family objected to any further continuances.

The district court declined to grant a trial continuance, noting its previous warnings and that Seymour was advised to disclose that information to any potential new counsel. Schoenhofer promptly moved to withdraw, explaining he would not be prepared to adequately represent Seymour at trial on August 1. The district court allowed Schoenhofer to withdraw, advising Seymour he would be proceeding pro se at trial "unless he finds another attorney who's willing to take the case and try it on August 1st."

*Seymour represents himself at trial and is convicted on all charges.*

The jury trial commenced on August 1, 2022. Before swearing in the jury panel, the district court advised Seymour at the State's request that "you cannot talk to the jury about anything related to your self-representation, other than just telling them that you're acting as your own attorney." During voir dire, Seymour moved for reconsideration of the motion to continue the trial, arguing the court was denying his constitutional right to assistance of counsel and right to a fair trial by forcing him to proceed pro se. The district court denied the motion, finding Seymour had not shown good cause for a continuance. As jury selection continued, some prospective jurors expressed concern that Seymour was representing himself at trial. After much discussion and objections from Seymour about what he could tell the prospective jurors, a jury was empaneled and sworn.

The trial proceeded over the next three days with Seymour representing himself. The State presented testimony from 16 witnesses, including L.F. and her mother; various City of Wichita police officers who assisted with the investigation; sexual assault nurse examiners who performed examinations of Seymour and L.F.; a forensic analyst who concluded that DNA from Seymour's saliva and hair was found on L.F.; and an employee of the grocery store with security footage used to identify Seymour's vehicle. The State also admitted more than 50 exhibits, consisting of officer body cam videos and police reports; maps, photos, and diagrams of the areas where the incident occurred; and items used to identify and apprehend Seymour, such as photos L.F. used in a lineup, L.F.'s drawing of the knife Seymour used and the knife itself, L.F.'s vaping device found in Seymour's vehicle, and forensic evidence collected during the investigation.

At times during the trial, Seymour expressed frustration when the district court ruled in the State's favor on his evidentiary objections or sustained the State's objections to parts of his cross-examination. The district court admonished Seymour several times for failing to ask questions properly and making comments that constituted improper testimony or commentary during the State's presentation of evidence. After the State rested, Seymour declined to testify or present additional evidence. During Seymour's closing argument, the district court sustained 12 of the State's objections to Seymour mentioning facts not in evidence. The jury found Seymour guilty on all charges.

The next week, Schoenhofer reentered his appearance as defense counsel and moved for a judgment of acquittal and motion for new trial on the grounds that Seymour was denied his constitutional right to assistance of counsel and due process. The district court denied Seymour's motion for a judgment of acquittal and new trial at sentencing. The district court imposed a controlling sentence of 570 months' imprisonment. Seymour timely appealed the district court's judgment.

## DID THE DISTRICT COURT VIOLATE SEYMOUR'S CONSTITUTIONAL RIGHT TO ASSISTANCE OF COUNSEL?

Seymour's appeal generally concerns his belief that he was denied his Sixth Amendment right to assistance of counsel because he was "forced" to represent himself at trial. Seymour claims the district court violated his Sixth Amendment right to counsel by refusing his request for court-appointed counsel after he indicated he wanted to discharge Mank. He also claims the district court abused its discretion by denying a continuance to give his newly hired attorney time to prepare for trial. The State contests Seymour's arguments by pointing out that he clearly and unequivocally invoked his right to self-representation and was expressly advised many times that the trial would not be delayed solely because he changed his mind and hired a new attorney on the eve of trial.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." The Sixth Amendment guarantees criminal defendants the right to the assistance of legal counsel during all critical stages of a criminal proceeding. *Miller v. State*, 298 Kan. 921, 929, 318 P.3d 155 (2014). The violation of a defendant's right to the assistance of counsel at trial is structural error. Errors are structural when they defy analysis by harmless error standards because they affect the framework within which the trial proceeds. *State v. Johnson*, 310 Kan. 909, 913-14, 453 P.3d 281 (2019). An appellate court exercises unlimited review over questions involving a defendant's right to counsel. *State v. Bunyard*, 307 Kan. 463, 470, 410 P.3d 902 (2018).

Seymour first claims the district court violated his Sixth Amendment right to counsel by refusing his request for court-appointed counsel after he indicated he wanted to discharge Mank. The State asserts that the district court properly denied Seymour's request to discharge Mank because Seymour failed to show "justifiable dissatisfaction"

11

with Mank's performance as counsel. The State then points out that Seymour decided to represent himself and contends the district court properly advised Seymour of his rights and honored his request for self-representation.

Mank was Seymour's retained counsel. Seymour became dissatisfied with Mank's services and filed a motion for ineffective assistance of counsel. In the motion, Seymour asked the district court to remove Mank from the case and appoint a "pro bono attorney." At the hearing on December 2, 2021, when the State asked for clarification on what Seymour wanted, he stated, "I want a new lawyer. I want a pro bono lawyer, because I've had a public defender before." Seymour not only wanted Mank removed from the case, but he wanted the district court to appoint a pro bono lawyer because he had received a public defender before. The district court ultimately found that Seymour's complaints about Mank failed to establish justifiable dissatisfaction to remove him from the case.

The key question in this appeal is whether the district court properly refused to consider Seymour's request for court-appointed counsel on the ground that he failed to show justifiable dissatisfaction with his retained counsel, Mank. We find the district court erred by doing so and, in the process, violated Seymour's constitutional right to counsel.

In its motion for rehearing or modification, the State asserts that our court raised this issue sua sponte even though it had not been addressed by the parties in their original briefing. We disagree with the State's characterization of the issues raised and discussed in the original briefing. The thrust of Seymour's original brief was that he was denied counsel and was "forced" to represent himself at trial. He argued throughout his brief that his request for appointed counsel was denied and he was only given the choice of using retained counsel, Mank, or representing himself. To properly analyze the overall issue raised by Seymour, this court addressed whether the district court applied the correct standard when it refused to allow Mank to withdraw because Seymour could not show "justifiable dissatisfaction" with his retained counsel. In response to questions at oral

12

argument, and before our original memorandum opinion was filed, the State filed a letter of additional authority under Supreme Court Rule 6.09 (2024 Kan. S. Ct. R. at 40) citing cases that addressed the issue. Still, in its motion for rehearing or modification, the State asked to file a supplemental brief on the issue, and we granted that request.

Under the Sixth Amendment, an indigent defendant charged with a felony or a serious misdemeanor crime in a state court has the unfettered right to court-appointed counsel. *Gideon v. Wainwright*, 372 U.S. 335, 345, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963). But indigent defendants have no right to *choose* which attorney will be appointed to represent them. In that regard, Kansas law establishes that to warrant substitute counsel, a defendant must show "'justifiable dissatisfaction'" with appointed counsel. *State v. Breitenbach*, 313 Kan. 73, 90, 483 P.3d 448 (2021); *State v. Sappington*, 285 Kan. 158, 166, 169 P.3d 1096 (2007). In *Breitenbach*, the court stated:

> "'[T]o warrant substitute counsel, a defendant must show "justifiable dissatisfaction" with *appointed counsel*. Justifiable dissatisfaction includes a showing of a conflict of interest, an irreconcilable conflict, or a complete breakdown in communications between counsel and the defendant. But ultimately, "'[a]s long as the trial court has a reasonable basis for believing the attorney-client relation has not deteriorated to a point where *appointed counsel* can no longer give effective aid in the fair presentation of a defense, the court is justified in refusing to appoint new counsel.'" [Citations omitted.]'" (Emphases added.) 313 Kan. at 90.

But the requirement for a defendant to show justifiable dissatisfaction with appointed counsel to warrant substitute counsel does not apply to retained counsel. Mank was Seymour's retained counsel, and it appears Seymour's family was paying for Mank's legal services because Seymour stated in his letter discharging Mank that he had advised his family to stop paying him. Seymour could discharge Mank without authorization from the court if he became dissatisfied with his counsel, and assuming Seymour was

13

indigent, he could request the court to appoint counsel for the rest of the case including the trial. That is what Seymour wanted to do at the hearing on December 2, 2021.

In its letter of additional authority under Supreme Court Rule 6.09, the State cites two cases for the proposition that "[w]hile the justifiable dissatisfaction standard has traditionally been applied in cases in which initial counsel was appointed, this court has also applied the rule in cases in which counsel was retained." It cites the same two cases in its supplemental brief. But a closer reading of the two cases cited by the State reveals that the cases do not support this claim. In *State v. Moore*, No. 117,282, 2018 WL 1770198, at *3-4 (Kan. App. 2018) (unpublished opinion), Moore argued on appeal that the district court abused its discretion by failing to inquire into his letter to the judge asserting that his retained attorney was ineffective. This court addressed the merits of the issue and found that "Moore's letter did not articulate a justifiable dissatisfaction with his attorney." 2018 WL 1770198, at *4. But in the same paragraph, this court added: "Moreover, the proper avenue for Moore to have taken, if he so chose, was to terminate [retained counsel] and then ask for the appointment of new counsel or substitution of new retained counsel." 2018 WL 1770198, at *4. So the *Moore* panel recommended that the defendant in that case should have taken the action that Seymour tried to take in his case. Likewise, in *State v. Maddox*, No. 113,621, 2016 WL 7031839, at *2-3 (Kan. App. 2016) (unpublished opinion), Maddox argued on appeal that the district court erred in failing to inquire into the possibility of a conflict with his retained attorney. In rejecting the claim, this court pointed out that "[i]f Maddox sincerely believed that [retained counsel's] representation was ineffective, he could have terminated him or brought such an allegation to the attention of the district court either prior to or at the bench trial." 2016 WL 7031839, at *3.

We find the district court erred by refusing Seymour's request to discharge Mank because Seymour could not show justifiable dissatisfaction with Mank's services. Seymour could discharge Mank without showing a justifiable dissatisfaction and request

14

appointed counsel, if indigent. The State was requesting a trial continuance due to the unavailability of a witness at the same hearing in which Seymour was trying to discharge Mank, so it cannot be said that Seymour's request for appointed counsel was merely a delay tactic. Along with the district court finding that Seymour failed to show "good cause" for the reappointment of counsel, it appears the district court was concerned about finding replacement counsel. At one point in the hearing, the district court commented that "I don't have anybody else I can appoint on this case." The prosecutor added, "[W]e're very low on lawyers right now, given the fact, due to Covid." If the court believed that Seymour was not indigent and did not qualify for appointed counsel, there would have been no reason for the court to comment about the shortage of available attorneys.

Practical considerations aside, the district court should have considered Seymour's request for appointed counsel if he was indigent. We know that Seymour was indigent when the charges were filed because the district court appointed the public defender's office to represent him based on his affidavit of indigency. Retained counsel later entered an appearance for Seymour, but it appears that his family was paying for the legal services. Just because Seymour's family may have gratuitously paid for retained counsel does not mean that Seymour was no longer indigent and qualified to receive appointed counsel. See K.S.A. 22-4504(b) and K.A.R. 105-4-1 (district court considers *defendant's* assets and income to determine indigency, not the assets of the defendant's family). Although K.A.R. 105-4-1(b) allows the court to consider the defendant's household income, and Seymour's original affidavit of indigency stated that he lived with his mother, the affidavit also stated that his mother had no income.

Most importantly, the district court obviously considered Seymour to be indigent because it granted his request for an investigator to be paid by BIDS at the hearing in January 2022. The district court also approved Seymour's affidavit to waive registration fees in another case at the hearing in April 2022. When the district court learned at that

15

same hearing that Seymour might receive money from his mother's estate, it commented that Seymour "may not be indigent in the near future"—implying that the court believed Seymour was indigent then. Finally, at the June 2022 hearing, the following exchange took place between the court and Seymour about whether he had funds to hire counsel:

> "THE COURT: So do you have the means to hire counsel? Do you have the money for that?
> "MR. SEYMOUR: Am I—am I going to have the means? Yes.
> "THE COURT: So right now, you do not?
> "MR. SEYMOUR: Not—not right now, no."

When the district court denied Seymour's request for appointed counsel in December 2021, it did not say it was doing so because Seymour had retained counsel and was no longer indigent. Seymour made it clear that he wanted Mank to be replaced by a court-appointed attorney. If the district court had any question about Seymour's indigent status at that hearing, it could have asked Seymour to submit another financial affidavit. But the district court did not reach this step because it found that Seymour failed to show justifiable dissatisfaction with Mank's services as retained counsel. As we have stated, the district court erred in refusing Seymour's request to discharge Mank for this reason.

In its motion for rehearing or modification, the State asserts that our court engaged in "layers of speculation with respect to [Seymour's] financial status" when he requested appointed counsel in December 2021. We agree with the State that the record does not reflect with certainty whether Seymour was indigent and would have qualified for court-appointed counsel in December 2021. But that's the point, the district court never reached this step. Seymour clearly asked for a court-appointed lawyer at the hearing on December 2, 2021. But after erroneously denying Seymour's request to discharge Mank because he did not show justifiable dissatisfaction with his retained counsel, the district court insisted for the rest of the case that Seymour's only options were to proceed with Mank or to represent himself. The district court did not give Seymour a chance to complete another

16

affidavit to verify he was still indigent. But as we already have discussed, the record shows the district court considered Seymour to be indigent: (1) the district court originally appointed the public defender to represent Seymour based on his affidavit of indigency, (2) the district court appointed a private investigator for Seymour at the January 2022 hearing to be paid by BIDS, (3) the district court waived Seymour's registration fees at the April 2022 hearing, and (4) the district court asked Seymour at the June 2022 hearing if he could afford to hire an attorney and Seymour said no.

*The court's advisories about Seymour's self-representation compounded the error.*

The State emphasizes that Seymour decided to represent himself and contends the district court properly advised Seymour of his rights and honored his request for self-representation. The State is correct that after the district court denied Seymour's request to discharge Mank, Seymour filed a "Motion For Pro Se (Self Representation)," invoking his right to self-representation under the Sixth Amendment. The district court held a hearing on this motion on January 6, 2022, and advised Seymour about some of his rights and the pitfalls of self-representation. At the end of the hearing, the district court granted Seymour's request for self-representation and allowed Mank to withdraw from the case. But, of course, this was not Seymour's first choice of action. His first choice of action was to discharge Mank and have him replaced with a court-appointed attorney. At the June 2022 hearing, Seymour reminded the district court that the only reason he chose to represent himself was "because of the fact Mank wasn't doing his job."

As mentioned, the district court granted Seymour's request for self-representation after advising him of his rights using the procedure suggested in *Lowe*, 18 Kan. App. 2d at 76-77; see also *State v. Vann*, 280 Kan. 782, 793-95, 127 P.3d 307 (2006) (citing *Lowe* favorably). Our Supreme Court has said there is no checklist for a district court when determining whether a defendant's waiver of counsel is knowing and intelligent, but the circumstances must be examined in each case. *State v. Burden*, 311 Kan. 859, 864, 467

17

P.3d 495 (2020). Still, the procedure in *Lowe* is thorough and used by many district courts in making a record on a defendant's request for self-representation. Significantly, the first factor identified in *Lowe* is that the judge should inform the defendant: "'1. That at any time he or she could change his or her mind and retain counsel to represent him or her *or petition the court for appointment of counsel* to represent him or her [to] assist with his or her defense.'" (Emphasis added.) 18 Kan. App. 2d at 76.

But at the hearing on Seymour's motion for self-representation, the district judge led off Seymour's rights by explaining:

> "First of all, at any time if you do represent yourself, you can change your mind and hire an attorney to represent you. In this case, you have already hired an attorney, and I've denied your motion to have a court-appointed attorney because you have hired counsel, and I did not find that there was a grounds for you to be dissatisfied with the services to the point of appointing counsel. *So you've hired Mr. Mank. If you act as your own attorney and then change your mind, you can have Mr. Mank represent you. But, those are basically going to be your two choices.*" (Emphasis added.)

The district court did not explain to Seymour that if he changed his mind about self-representation, he could petition the court for appointment of counsel, as the right is stated in *Lowe*. Instead, the district court made it clear that Seymour's only two options were to represent himself or to use Mank. This warning compounded the district court's error in not considering Seymour's earlier request for a court-appointed attorney. The district court maintained this position for the rest of the case. At the June 13, 2022 hearing, the district court asked Seymour if he would hire an attorney or represent himself at trial; reinforcing the fact that those were Seymour's only two options.

For these reasons, we find the district court violated Seymour's Sixth Amendment right to counsel when it ignored his request for a court-appointed attorney to replace Mank and maintained for the rest of the proceedings that Seymour's only choice was to

represent himself or to use retained counsel. We need not address Seymour's additional arguments on appeal. The violation of a defendant's right to the assistance of counsel at trial is structural error because it affects the framework of the trial. *Johnson*, 310 Kan. at 914. We realize this outcome may be viewed by some as a harsh result; structural error often leads to a harsh result. But there is no room for harmless error analysis, despite the overwhelming evidence the State may have presented establishing Seymour's guilt. We reverse Seymour's convictions, vacate his sentences, and remand for further proceedings.

Reversed and remanded.